IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY BUZIO SANCHEZ,<br><br>Defendant. | CR. NO. 13-00513 JMS (02)<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SENTENCE REDUCTION UNDER FIRST STEP ACT (COMPASSIONATE RELEASE), ECF NO. 134 |

### ORDER DENYING DEFENDANT'S MOTION FOR SENTENCE REDUCTION UNDER FIRST STEP ACT (COMPASSIONATE RELEASE), ECF NO. 134

### I. INTRODUCTION

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Defendant Anthony Buzio Sanchez ("Defendant") moves for compassionate release from Federal Correctional Institution Hazelton ("FCI Hazelton"). ECF No. 134. The court determines that Defendant has failed to show extraordinary and compelling reasons to warrant release, and even if he had, the court would deny the motion based on consideration of the applicable 18 U.S.C. § 3553(a) factors. Thus, for the following reasons, the Defendant's Motion for Compassionate Release is DENIED.

## II.  BACKGROUND

Defendant, currently 47 years old,[1] is incarcerated at FCI Hazelton with a projected release date of March 17, 2027.  *See* https://www.bop.gov/inmateloc/ (last visited August 4, 2021).

On February 10, 2014, Defendant pled guilty without a plea agreement to a single-count Indictment charging him with knowingly and intentionally attempting to possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  ECF No. 18 at PageID ## 27, 29; ECF Nos. 56, 60, 71.  On July 30, 2014, Defendant was sentenced to a term of 188 months imprisonment to be followed by a term of five years of supervised release.  ECF No. 101 at PageID ## 284-85.

On April 27, 2021, Defendant submitted a request for compassionate release to FCI Hazelton's warden.[2]  ECF No. 134-1 at PageID # 565.  That request was denied on May 11, 2021.  *Id.* at PageID # 567.  Defendant then filed the instant Motion for Compassionate Release on June 21, 2021.  ECF No. 134.  On

---

[1] In his Motion, Defendant identifies as 48 years old.  ECF No. 134 at PageID # 559.  His date of birth is listed as August 19, 1973 in the Presentence Investigation Report ("PSR").  ECF No. 102 at PageID # 290.

[2] This is Defendant's second compassionate release motion, the first having been filed on June 8, 2020.  ECF No. 112.  On August 24, 2020, the court denied Defendant's first compassionate release motion without prejudice for failure to exhaust administrative remedies.  ECF No. 132 at PageID # 527.

July 15, 2021, Defendant filed a Supplemental Memorandum.  *See* ECF Nos. 140-1, 141.  The Government filed its Opposition on July 26, 2021.  ECF No. 142.  The court decides the Motion without a hearing pursuant to Local Rule 7.1(c).

### III.  DISCUSSION

**A.    Legal Standard**

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, which provides as relevant:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Thus, the court may reduce Defendant's sentence if: (1) Defendant has exhausted the required administrative remedies; (2) the court determines, after consideration of the applicable section 3553(a) factors, that Defendant has shown

that "extraordinary and compelling reasons" warrant the reduction; and (3) the reduction is consistent with any applicable Sentencing Commission policy statements. Here, the parties agree that Defendant has exhausted his administrative remedies. ECF No. 134-1 at PageID ## 565, 567; ECF No. 142 at PageID ## 666-67.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, was promulgated before the First Step Act provided defendants with the ability to file motions for compassionate release on their own behalf (and, without a quorum, the Sentencing Commission has been unable to amend the Guidelines post-First Step Act). The Ninth Circuit has therefore determined that the Guidelines lack any policy statement "applicable" to a defendant-filed motion for compassionate release. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). This court is thus empowered to consider any extraordinary and compelling reason that warrants a sentence reduction. In making this determination, "[t]he Sentencing Commission's statements in [§ 1B1.13] may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id*.

### B.     Extraordinary and Compelling Reasons Do Not Warrant Release

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release.  *See, e.g.*, *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020) (citations omitted).

Here, Defendant argues that he suffers "severe health issues" that put him at "constant risk of infection and reinfection" of COVID-19 and its variants.  ECF No. 134 at PageID # 550.  Defendant also claims that FCI Hazelton—like other Bureau of Prison ("BOP") facilities at which Defendant has served parts of his sentence—does not provide a safe environment to protect against COVID-19.  *Id.* at PageID # 551.

But the COVID-19 pandemic alone does not constitute an extraordinary and compelling reason for release.  *See, e.g.*, *United States v. Drummondo-Farias*, 460 F. Supp. 3d 1008, 1014 (D. Haw. 2020) (explaining that "'[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement'") (quoting *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020)); *see also United States v. Brooks*, 491 F. Supp. 3d 33, 37 (W.D. Pa. 2020); *United States v. Mitchell*, 471 F. Supp. 3d 1130, 1138 (W.D. Wash. 2020).  Further, Defendant has not shown that the hardships he faces at FCI Hazelton differ significantly from any other BOP facility.

The BOP reports that of 1,241 inmates tested at FCI Hazelton, 195 have tested positive for COVID-19 over the course of the pandemic, with two additional tests pending.[3]  *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited August 4, 2021).  At present, FCI Hazelton is doing much better—BOP presently reports that zero inmates and one staff member have "confirmed active cases" of COVID-19.  *See id*.  Although the court recognizes that COVID-19 cases could rise again at FCI Hazelton, the institution has shown great improvement over the past months.  And as COVID-19 vaccinations continue to be administered, the threat of a COVID-19 outbreak should continue to decrease over time.[4]

      Defendant lists numerous medical conditions that allegedly increase his risk relating to COVID-19, including: acute bronchitis; Barrett's esophagus; esophageal reflux; peptic ulcer; "chronic acute rhinitis"; diverticulosis; gastritis, including acute nonhemorrhagic gastritis ("Mild to Moderate"); headaches and associated dizziness; hyperlipidemia; low blood pressure; hypermetropia (blurry vision); and presbyopia (farsightedness).  ECF No. 134 at PageID # 556.  He has also "had no less than three . . . documented abnormal electrocardiogram ("ECG")

---

[3] FCI Hazelton currently houses 1,563 inmates.  *See* https://www.bop.gov/locations/institutions/haf/ (last visited August 4, 2021).

[4] As of August 4, 2021, the FCI Hazelton has completed full inoculations of 1,986 inmates and 389 staff members.  *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited August 4, 2021).  And, as discussed further below, Defendant has been vaccinated.  *See* ECF No. 134 at PageID ## 548, 550, 557; *see also* ECF No. 134-2 at PageID # 570.

readings," which suggest "a potential heart problem."  *Id*.  The court addresses each condition in turn.

Although *chronic* bronchitis increases a person's risk relating to COVID-19, *see* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 4, 2021), Defendant claims he suffers from "*acute* bronchitis," ECF No. 134 at PageID # 556.  Acute bronchitis is commonly known as a chest cold, a condition that is "usually caused by a virus and often occur[ing] after an upper respiratory infection"; it also "usually gets better on its own."  Chest Cold (Acute Bronchitis), https://www.cdc.gov/antibiotic-use/bronchitis.html (last visited August 4, 2021).  Defendant's BOP medical records appear to include only three documented instances of Defendant suffering from bronchitis—specifically, acute bronchitis—from which he appears to have recovered.[5]  ECF No. 140-1 at PageID # 648; ECF No. 142-5 at PageID # 759.  The CDC does not list acute bronchitis as a COVID-19 risk factor and the court therefore concludes that Defendant's resolved cases of acute bronchitis do not increase his COVID-19 risk.

---

[5] Although Defendant's 2013 acute bronchitis diagnosis has a status listed as "Current," his medical records include two *subsequent* acute bronchitis diagnoses.  ECF No. 142-5 at PageID # 759.  Regardless, all of Defendant's diagnoses of acute bronchitis—one each in 2013, 2014, and 2016—are listed under the larger heading of "Resolved."  *Id.*

And like acute bronchitis, most of the other conditions Defendant asserts as increasing his risk are not listed by the CDC as COVID-19 risk factors. More specifically, Defendant's gastroenterological conditions (Barrett's esophagus, esophageal reflux (commonly known as acid reflux), peptic ulcer, diverticulosis, and gastritis) and vision conditions (hypermetropia and presbyopia) are not specified as COVID-19 risk factors. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 4, 2021). The same is true for his headaches and associated dizziness, rhinitis, hyperlipidemia, and low blood pressure. *See id*. Further, Defendant's BOP medical records list a number of these conditions as either in remission or resolved, including rhinitis, peptic ulcer, headaches, and dizziness.[6] ECF No. 140-1 at PageID ## 647-48, 650; ECF No. 142-5 at PageID ## 758-59, 761.

Heart conditions—including heart disease and other heart conditions such as atrial fibrillation and hypertension—"can make you more likely to get severely ill from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 4, 2021); *see also* https://www.cdc.gov/heartdisease/other_conditions.htm (last

---

[6] Several conditions listed by Defendant are not reflected at all in the BOP medical records provided, including diverticulitis and gastritis. *See generally* ECF Nos. 134-2, 140-1, 145-2.

visited August 4, 2021).  Defendant's medical records include several abnormal ECG readings, *see* ECF No. 134-3 at PageID ## 611-615, indicating a "potential heart problem," ECF No. 134 at PageID # 556.  Although it is impossible for the court to determine what exactly Defendant's abnormal ECG results from 2017 and 2018 indicate,[7] the court assumes for purposes of this Order that Defendant suffers from a heart condition that places him at an increased risk should he contract COVID-19 again.[8]

Also, at 5'2" tall and with a current weight[9] of 145 pounds, Defendant has a body mass index ("BMI") of 26.5.  ECF No. 134-2 at PageID # 588.  According to the National Institutes of Health, a BMI of 25 to 29.9 indicates that an individual is overweight.  *See* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited August 4, 2021).  And according to the CDC, being overweight "can make you more likely to get severely ill from COVID-19.  The risk of severe COVID-19

---

[7] Although Defendant has a history of abnormal ECG readings, a February 2021 ECG review appears to indicate that Defendant has a normal heart rhythm.  ECF No. 134-2 at PageID # 589 ("EKG reviewed 2/2021 NSR," which appears to be medical shorthand for normal sinus rhythm); *see also Stedmans Medical Dictionary* 783890 (Nov. 2014) (defining "sinus rhythm" as "normal cardiac rhythm proceeding from the sinoatrial node; in healthy adults its rate is 60-90 beats/min").

[8] As set forth below, Defendant previously contracted and recovered from COVID-19.  *See* ECF No. 134 at PageID ## 548, 550, 557; *see also* ECF No. 134-2 at PageID # 570.

[9] The court includes Defendant's most recent weight according to a February 17, 2021 Bureau of Prisons medical encounter.  ECF No. 134-2 at PageID # 588.  Defendant's weight around the time of his offense was 152 pounds.  PSR ¶ 49, ECF No. 102 at PageID # 301.

illness increases sharply with elevated BMI." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 4, 2021).

Defendant further argues that he is not receiving proper medical care while incarcerated, and for "medical reasons alone," compassionate release is warranted. ECF No. 134 at PageID # 557. In support, he cites to a single instance in which a test sample was not packed properly, "causing the samples to be rejected by the lab," as well as his suffering from "diagnosed and undiagnosed health issues." *Id*.; *see* ECF No. 134-4 at PageID # 617.

But Defendant has not demonstrated that the medical care he receives is any different from that experienced by other federally incarcerated individuals, nor is there any evidence in the record to suggest that he is not receiving treatment for his medical conditions. In fact, although Defendant appears to suffer from at least two conditions that increase his COVID-19 risk, his medical records indicate that he receives regular medical treatment and is prescribed medications for his diagnosed conditions. *See generally* ECF Nos. 134-2, 142-5. Chronic medical conditions coupled with a single instance of improperly packaged lab tests simply do not constitute "extraordinary and compelling reasons" justifying release. *See, e.g.*, *United States v. Weidenhamer*, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019) ("To be faithful to the statutory language requiring 'extraordinary and

compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."); *cf. United States v. Lindell*, ___ F. Supp. 3d ___, 2021 WL 420059, at *1-2, 4-6 (D. Haw. Feb. 5, 2021) (granting compassionate release where a Defendant provided evidence that, over the course of a number of years, there had been *routine and significant* delays in diagnosing and medically treating his age-related macular degeneration, leading him to suffer "a large degree" of preventable vision loss). Nor do Defendant's conclusory allegations regarding "undiagnosed health issues" justify compassionate release where, in the years since his three abnormal ECG readings—dated July 2017, December 2017, and March 2018, ECF No. 134-3 at PageID ## 613-15—Defendant has had subsequent related follow-up medical care, including additional ECGs, *see* ECF No. 134-2 at PageID ## 578, 579.

        Significantly, Defendant's medical records also indicate that he already contracted COVID-19 in late December 2020 and was considered recovered from the virus in early January 2021. ECF No. 134-2 at PageID # 570. And most significant, Defendant has been vaccinated against COVID-19 while in BOP custody.[10] ECF No. 134 at PageID # 550, 551. As a result, Defendant's risk

---

[10] Defendant received his first dose of the Moderna COVID-19 vaccine on May 6, 2021 and the second dose on June 3, 2021. ECF No. 142-5 at PageID # 766.

of symptomatic re-infection is greatly diminished. *See, e.g.*, *United States v. Hayes*, 2021 WL 2533517, at *3 (D. Idaho June 21, 2021) ("Many courts have found that a vaccinated prisoner's risk of contracting COVID-19 does not rise to the level of an extraordinary and compelling reason, even in the presence of underlying health conditions." (citations omitted)); *United States v. Del Rosario Martinez*, ___ F. Supp. 3d ___, 2021 WL 956158, at *3 (S.D. Cal. March 20, 2021) ("Defendant's 'vaccination significantly mitigates the risk that [he] will contract COVID-19.'") (quoting *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021)); *United States v. Ballenger*, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release."); *see also* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited August 4, 2021).

>As stated by the CDC,
>
>Currently authorized vaccines in the United States are highly effective at protecting vaccinated people against symptomatic and severe COVID-19. Fully vaccinated people are less likely to become infected and, if infected, to develop symptoms of COVID-19. They are at substantially reduced risk of severe illness and death from COVID-19 compared with unvaccinated people.

*Interim Public Health Recommendations for Fully Vaccinated People*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last visited August 4, 2021). Given this understanding, Defendant's claim that he may contract COVID-19 post-vaccination is speculative. *See* ECF No. 134 at PageID ## 550-51.[11] This ground, standing alone, is a basis to deny his Motion for Compassionate Release.

And finally, at 47 years old, Defendant is not in the highest risk age group, although he does face a somewhat elevated risk. As stated by the CDC:

> Older adults are more likely to get very sick from COVID-19. Getting very sick means that older adults with COVID-19 might need hospitalization, intensive care, or a ventilator to help them breathe, or they might even die. The risk increases for people in their 50s and increases in 60s, 70s, and 80s. People 85 and older are the most likely to get very sick.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited August 4, 2021).

---

[11] Defendant also submitted a Supplement, ECF No. 140-1, in which he asserts that he "is still at an increased risk of re-contracting COVID-19, or one of the new rapidly evolving variants while he is incarcerated." ECF No. 140-1 at PageID # 641. Although the COVID-19 pandemic remains a concern, the CDC makes clear that availing oneself of a COVID-19 vaccine when available is the most important step one can take in protecting oneself from the virus. *See* https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html (last visited August 4, 2021). Defendant, as discussed, has been vaccinated. *See* ECF No. 134-2 at PageID # 571; *see also* ECF No. 134 at PageID # 551.

Taking into account Defendant's age, risk factors, and that he is vaccinated against COVID-19, the court concludes that he has failed to demonstrate that extraordinary and compelling reasons warranting compassionate release.[12]

### C. Section 3553(a) Factors

Even if extraordinary and compelling factors *did* warrant compassionate release, the court must also examine the applicable § 3553(a) factors. And after careful review, the court determines that a consideration of those factors weighs heavily against Defendant's release. *See, e.g.*, *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (stating that compassionate release is discretionary and may be refused after a consideration of the applicable § 3553(a) factors).

As relevant to this case, the § 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant";[13] and (2) "the need for the sentence imposed . . . (A) to reflect the

---

[12] To the extent Defendant argues that compassionate release is warranted not based on the future risk of contracting COVID-19, but because he experienced difficult times while incarcerated during the COVID-19 pandemic, ECF No. 134 at PageID # 549, the circumstances he describes are not sufficient to establish an extraordinary and compelling reason justifying release.

[13] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody. *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)-(2).  And, under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).  18 U.S.C. § 3553(a).

Here, Defendant pled guilty without a plea agreement to a single-count felony Indictment charging him with knowingly and intentionally attempting to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846.  ECF Nos. 56, 60, 71.  Defendant was held responsible for 2,882 grams of "ice."  PSR ¶ 26, ECF No. 102 at PageID # 297.  The court also determined that Defendant acted as "an organizer, leader, or supervisor."  PSR ¶ 29, *id*. at PageID # 298.  Further, in 2009 Defendant was convicted for Possession of Controlled Substance for Sale in Riverside, California.  PSR ¶ 38, *id*. at PageID # 299.  In other words, the instant conviction is Defendant's second felony controlled substance conviction.

And although the court recognizes that Defendant has served just over fifty percent of his sentence, he still has more than five and a half years remaining,

with a projected release date of March 17, 2027. *See* https://www.bop.gov/inmateloc/ (last visited August 4, 2021); *see also* ECF No. 142 at PageID # 666 (citing PSR ¶ 3, ECF No. 102 at PageID # 293).[14] Also, as of July 2021, Defendant has had three disciplinary infractions documented during his incarceration: "disruptive conduct—high" in 2014; attempted assault in 2017; and absence from an assignment in 2018. ECF No. 142-3 at PageID # 683. Each of these infractions resulted in the temporary loss of privileges, with the 2017 attempted assault incident also resulting in a loss of twenty-seven days of good conduct time. *See id.*; *see also* ECF No. 142 at PageID ## 678-79. Although his educational and rehabilitation efforts while in prison are certainly commendable, ECF No. 134-5, they do not justify compassionate release when considered along with the other § 3553(a) factors.

    Considering all of the § 3553(a) factors, including the offense conduct, Defendant's criminal history, Defendant's programming in custody, and the time remaining on Defendant's sentence, reducing Defendant's sentence would severely undermine the goals of sentencing set forth in § 3553(a)(2).

---

[14] When evaluating the § 3553(a) factors, courts consider the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release. *See, e.g.*, *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020); *Chambliss*, 948 F.3d at 694; *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, 459 F. Supp. 3d 653, 659 (E.D. Pa. 2020).

In sum, the court finds that Defendant has not established the requisite extraordinary and compelling reasons to warrant compassionate release, and even if he had, the court would deny the motion based on the relevant § 3553(a) factors.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Sentence Reduction Under First Step Act (Compassionate Release), ECF No. 134, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 4, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Sanchez*, Cr. No. 13-00479 JMS, Order Denying Defendant's Motion for Sentence Reduction Under First Step Act (Compassionate Release), ECF No. 134